# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and ALMANZA
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist KEVIN RODRIGUEZ**
**United States Army, Appellant**

ARMY 20130577

Headquarters, National Training Center and Fort Irwin
Timothy P. Hayes, Jr., Military Judge
Lieutenant Colonel Gail A. Curley, Staff Judge Advocate (pretrial)
Lieutenant Colonel Jeffrey A. Miller, Staff Judge Advocate (post-trial)

For Appellant: Captain Scott A. Martin, JA (argued); Colonel Kevin Boyle, JA; Lieutenant Colonel Jonathan F. Potter, JA; Major Yolanda McCray Jones, JA (on brief); Lieutenant Colonel Jonathan F. Potter, JA; Captain Heather L. Tregle, JA (on supplemental brief).

For Appellee: Captain Tara E. O'Brien, JA (argued); Major A.G. Courie III, JA; Major Steven J. Collins, JA; Captain Benjamin W. Hogan, JA (on brief); Major A.G. Courie III, JA; Major Steven J. Collins, JA; Captain Tara E. O'Brien, JA (on supplemental brief).

1 December 2015

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ALMANZA, Judge:

A military judge sitting as a general court-martial convicted appellant, consistent with his pleas, of one specification of failing to obey a lawful order, one specification of sexual abuse of a child by committing a lewd act, and six specifications of wrongfully annoying and molesting a minor in violation of

California Penal Code § 647.6(a)(1),[1] in violation of Articles 92, 120b, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920b, and 934 (2012) [hereinafter UCMJ].[2] The military judge sentenced appellant to a bad-conduct discharge, confinement for two years, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged and credited appellant with sixty-three days of confinement.

This case is before us pursuant to Article 66, UCMJ. Appellant raises three assignments of error and one supplemental assignment of error. We granted appellant's request for oral argument on two of his assignments of error and heard argument on 20 October 2015.[3] As appellant's first assignment of error merits discussion and relief, his remaining assignments of error are rendered moot.

## BACKGROUND

Appellant was stationed at Fort Irwin, California. On several occasions between November 2012 and April 2013, appellant followed minor girls walking on post in his car, and then approached them and talked to them. In November 2012, appellant drove up to ACA, a fourteen-year-old girl walking along the road, rolled down his window, and asked her for her phone number. After ACA said, "no" and tried to walk away, appellant parked and asked her to join him. When she did, they spoke and ACA told him she was fourteen. Appellant subsequently took her cell phone, entered his phone number in it, and called himself so he would have her phone number. The next day, appellant sent ACA a text asking if she wanted to have sex with him.[4]

---

[1] The provision reads, "[e]very person who annoys or molests any child under 18 years of age shall be punished by a fine not exceeding five thousand dollars ($5,000), by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment."

[2] After appellant pleaded not guilty to one specification of wrongfully annoying and molesting a minor in violation of Cal. Penal Code § 647.6(a)(1) assimilated under Article 134, UCMJ, and to one specification of stalking in violation of Article 120a, UCMJ, the military judge dismissed these two specifications in accordance with the terms of the pretrial agreement.

[3] We note with appreciation the high level of oral and written advocacy on behalf of both parties in this case.

[4] This text message, which constituted a lewd act upon a child, was the basis for the Specification of Charge III.

On the morning of 21 February 2013, appellant approached two other girls, EMM and KMT—who were thirteen years and fourteen years old, respectively—in his car as they were walking to the Fort Irwin Middle School. He rolled down his car window, said, "hey," and told them, "you look good today." The girls then tried to ignore appellant and continued to walk to school. At that point, appellant circled around the block so he could continue following them in his car.[5]

On the morning of 22 February 2013, appellant was in his car and saw EMM as she was walking to the home of KMT before school. He waved to EMM a couple of times. When she raised her phone to take a picture of his license plate, he reversed his car so she could not see or take a picture of his license plate. Appellant then stopped his car and EMM walked away.[6]

On the same day, 22 February 2013, appellant was in his car and saw a twelve year old girl, ANC, on the way to Fort Irwin Middle School. He pulled up to her and asked her, "has anyone ever told you, you look gorgeous?"[7]

Just over a week later, on 1 March 2013, one of the teachers at Fort Irwin Middle School was told by two students that they had seen appellant driving nearby. The teacher then got in her car and followed appellant until he pulled over. After a brief conversation in which appellant asked the teacher if she knew him, appellant drove off. Five days later, on 6 March 2013, appellant's company commander ordered him to stay away from all schools, playgrounds, youth centers, and day care facilities on Fort Irwin and to have no verbal or physical contact with any minor females other than his stepdaughter.

Despite that "no contact" order, on 13 April 2013, appellant approached two girls, a twelve year old, TSH, and a thirteen year old, MGV, walking back to one of the girls' homes from the on-post commissary. Appellant drove up to them and asked them for their phone numbers. They declined and then ran away from

---

[5] This conduct, which constituted wrongfully annoying and molesting the girls in violation of Cal. Penal Code § 647.6(a)(1), was the basis for Specifications 2 and 3 of Charge I.

[6] This conduct, which constituted wrongfully annoying and molesting the girl in violation of Cal. Penal Code § 647.6(a)(1), was the basis for Specification 4 of Charge I.

[7] This conduct, which constituted wrongfully annoying and molesting the girl in violation of Cal. Penal Code § 647.6(a)(1), was the basis for Specification 5 of Charge I.

appellant's car. Shortly thereafter, the girls saw appellant drive through the neighborhood. TSH tried to see if she could get appellant's license plate number but did not succeed because, once appellant saw her running after his car, he accelerated and left the area.[8]

At trial, the military judge advised appellant that the offense described in Cal. Penal Code § 647.6(a)(1), the basis of Specifications 2-7 of Charge I,

> is not preempted by Article 120a, stalking, in that it [the California statute] prohibits conduct less severe than that required by the stalking article, which contemplates a fear of death or bodily harm. California Criminal Jury Instructions 1122 [the jury instructions applicable to the California statute] describes annoying or molesting a child as requiring that, first, you engaged in conduct directed at a child; second, a normal person, without hesitation, would have been disturbed, irritated, offended or injured by your conduct; third, your conduct was motivated by an unnatural and abnormal sexual interest in the child; and fourth, that the child was under the age of 18 years at the time of your conduct.
>
> It is not necessary that the child actually be irritated or disturbed. It's also not necessary that the child actually be touched. It is not a defense that the child may have consented to the act.

In pleading guilty to Specifications 2-7 of Charge I, appellant admitted the elements of Cal. Penal Code § 647.6(a)(1) accurately described his actions. He also admitted that the offenses occurred at Fort Irwin, California, a place under exclusive or concurrent federal jurisdiction, that Cal. Penal Code § 647.6(a)(1) was properly assimilated into federal law by 18 U.S.C. § 13, and finally that, under the circumstances, his conduct was both to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces.

---

[8] This conduct, which constituted wrongfully annoying and molesting the girls in violation of Cal. Penal Code § 647.6(a)(1) also constituted failure to obey the lawful order of appellant's company commander to have no verbal or physical contact with minor females and was simultaneously the basis for Specifications 6 and 7 of Charge I and the Specification of Charge IV.

## LAW AND ANALYSIS

In his first assignment of error, appellant argues that "the Government was preempted from charging the assimilated Article 134 offense in . . . [this] case because . . . Congress intended to limit prosecution for conduct of this nature in a complete way to Article 120b." Appellant asks us to dismiss Specifications 2-7 of Charge I and order a sentence rehearing. We agree with appellant that Specifications 2-7 of Charge I are preempted by Article 120b, UCMJ, and therefore must be set aside. However, we find a sentence rehearing unnecessary.

The President has limited the application of Article 134, UCMJ, by the doctrine of preemption, set forth below:

> The preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132. For example, larceny is covered in Article 121, and if an element of that offense is lacking—for example, intent—there can be no larceny or larceny-type offense, either under Article 121 or, because of preemption, under Article 134. Article 134 cannot be used to create a new kind of larceny offense, one without the required intent, where Congress has already set the minimum requirements for such an offense in Article 121.

*Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*, 2012), pt. IV, ¶ 60.c.(5)(a). The United States Court of Appeals for the Armed Forces has also required that, in order for preemption to apply, not only must an offense charged under Article 134 lack an element of an enumerated offense, "it must be shown that Congress intended the other punitive article to cover a class of offenses in a complete way." *United States v. Anderson*, 68 M.J. 378, 387 (C.A.A.F. 2010) (quoting *United States v. Kick*, 7 M.J. 82, 85 (C.M.A. 1979)). In *Anderson,* our superior court further explained, "[t]hus, we have required Congress to indicate through direct legislative language or express legislative history that particular actions or facts are limited to the express language of an enumerated article, and may not be charged under Article 134, UCMJ." *Id*. (citations omitted).

The Air Force Court of Criminal Appeals recently considered whether preemption applied to bar Article 134 offenses alleging violations of a state law prohibiting using a computer to entice a minor to engage in sexual contact and giving a minor a sexually oriented image. *United States v. Long*, 2014 CCA LEXIS 386 (A.F. Ct. Crim. App. 2 July 2014) (unpub.). In *Long*, a divided panel found that these offenses were preempted by Article 120b(c), finding first that the only difference between the state law and Article 120b(c) was that the state law covered children under 18 years of age while Article 120b(c) covered children under 16, and

second that Congress intended to cover these types of offenses in a complete way. *Id.* at *8-13.[9]

Here, appellant argues that Cal. Penal Code § 647.6(a)(1) is a sexually based crime, given its requirement that a defendant's conduct be motivated by a sexual interest in a child. Given the breadth of Article 120b, appellant argues that we should follow *Long* and find that the violation of California law is preempted.

In response, and in seeking to distinguish *Long*, the government argues that:

> In this case, the element, wrongfully annoy or molest is different from a lewd act. Appellant's actions are something not contemplated within Article 120b because it is addressing conduct that, while not amounting to indecent, is harassing and targeting children.

Upon reviewing the elements of an offense under Cal. Penal Code § 647.6(a)(1) and the elements of an offense under Article 120b(c), UCMJ, we find that the former are subsumed into the latter. We thus find the preemption doctrine applies because the conduct covered by the state law is also covered by Article 120b(c).

Specifically, the elements of a violation of Cal. Penal Code § 647.6(a)(1) are:

> 1. The defendant engaged in conduct directed at a child;
>
> 2. A normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct;
>
> 3. The defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child; [and]
>
> 4. The child was under the age of 18 years at the time of the conduct.

Judicial Council of California Criminal Jury Instructions (2015 ed.) No. 1122. As this offense was charged under all three clauses of Article 134, the government was also required to establish that appellant's conduct was prejudicial to good order and

---

[9] The federal Assimilative Crimes Act, 18 U.S.C. § 13, also contains language referencing the concept of preemption in that the statute only applies in those instances of misconduct not otherwise "punishable by any enactment of Congress," to include the UCMJ.

discipline or was service discrediting. We decline to find that the terminal element precludes application of the preemption doctrine. *See Long*, 2014 CCA LEXIS 386, at *9-11.

The elements of a violation of Article 120b(c), Sexual Abuse of a Child, are:

1. That the accused engaged in a lewd act; and

2. That the act was committed upon a child who has not attained the age of 16 years.

*MCM*, 2012, pt. IV, ¶ 45b(c); *see also* Note at IV-72. A "lewd act" for purposes of Article 120b(c), UCMJ, is defined, in relevant part, as:

intentionally communicating indecent language to a child by any means . . . with an intent to . . . arouse or gratify the sexual desire of any person; or

any indecent conduct, intentionally done with or in the presence of a child . . . that amounts to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations.

*MCM*, 2012, pt. IV, ¶ 45b(h)(5)(C) and (D).

There are only two differences between the elements of the state law offense and Article 120b(c). The first is that the state law protects children under 18, while Article 120b(c) protects children under 16. The second is that the state law prohibits conduct "motivated by an unnatural or abnormal sexual interest in the child" that "without hesitation, would have . . . disturbed, irritated, offended, or injured" a normal person, while Article 120b(c) prohibits indecent language or conduct as defined above.

With respect to the first difference, "[t]he Government cannot use Article 134, UCMJ, to enlarge the age range of an enumerated offense." *Long*, 2014 CCA LEXIS 386, at *9 (*citing Williams v. United States*, 327 U.S. 711 (1946)). That said, as the children victimized in this case were all under the age of 16, this facial difference is not significant for purposes of our "as-applied" analysis.

With respect to the second difference, a review of California case law indicates that the prohibition of Cal. Penal Code § 647.6(a)(1) is sufficiently broad

as to include indecent language or conduct. Thus, the state law prohibits the very same conduct that is also prohibited by Article 120b(c).

In *People v. Carskaddon*, the California Supreme Court interpreted the predecessor to Cal. Penal Code § 647.6(a)(1) and stated:

> Ordinarily, the annoyance or molestation which is forbidden is not concerned with the state of mind of the child but it is the objectionable acts of defendant which constitute the offense, and if his conduct is so lewd or obscene that the normal person would unhesitatingly be irritated by it, such conduct would annoy or molest within the purview of the statute.

49 Cal. 2d 423, 426 (1957) (citation and internal quotation marks omitted). We recognize that in *People v. Thompson*, the California Court of Appeal rejected the defendant's argument that in order to violate the predecessor of Cal. Penal Code § 647.6(a)(1), a defendant must have committed a lewd or obscene act. 206 Cal. App. 3d 459, 465-66 (Cal. App. 1988). In its holding, however, the *Thompson* court indicated that the *Carskaddon* court's discussion of "lewd or obscene" included not just the defendant's specific act, but the motivation for that act as well:

> the [*Carskaddon*] court's reference to a lewd or obscene act which would unhesitatingly irritate the normal person was a reference to the entire crime prohibited by the section: the forbidden "conduct" of the perpetrator. This would include both the act of annoying or molesting under the objective test, *and* the requisite mental state. We doubt the court intended to separate the two elements when it made its general statement about the section.

*Id.* at 465 (emphasis in original). *Thompson* stands for the proposition that a violation of Cal. Penal Code § 647.6(a)(1) may involve an act that, viewed without regard to its motivation, is not lewd or obscene. *Thompson* does not, however, stand for the proposition that a defendant's conduct, considering both his acts and the motivation for those acts, need not be lewd or obscene to violate the statute. Indeed, the California Supreme Court subsequently characterized the *Thompson* court's holding as follows, indicating that lewdness is still part of the equation: "[t]he . . . [*Thompson*] court concluded that, *although the conduct was not particularly lewd*, the 'behavior would place a normal person in a state of being unhesitatingly irritated, if not also fearful,' thereby satisfying the conduct element of [the

predecessor of § 647.6(a)(1)].  *People v. Lopez*, 19 Cal. 4th 282, 292 (1998) (emphasis added) (internal citation omitted).[10]

The California Supreme Court also made clear in *Carskaddon* that the California statute prohibits sexual misconduct with children, holding that "[t]he primary purpose of the [] statute is the protection of children from interference by sexual offenders, and the apprehension, segregation, and punishment of the latter." *Carskaddon*, 49 Cal. 2d at 425 (citations and internal quotation marks omitted).  In *People v. Shaw*, the California Court of Appeal reiterated the statute's purpose, stating that "it is the sexual interest in the child that is the focus of the statute's intent" and that "the primary purpose of the statute is to protect children from interference by sexual offenders."  177 Cal. App. 4th 92, 103 (Cal. App. 2009) (citing *In re Gladys R.*, 1 Cal. 3d 855, 867-68 (1970)).

Our review of the California cases leads us to conclude that Cal. Penal Code § 647.6(a)(1) is a statute aimed at sexual misconduct with children, and that it covers conduct that, when specific acts are considered in light of the motivation for those acts, is "indecent" as defined for purposes of Article 120b(c), UCMJ.  Moreover, government appellate counsel's characterization of appellant's conduct as a violation of the state law in support of its position that *Long* is distinguishable and that appellant's conduct did "not amount[] to indecent," in our view, tends to support a conclusion that the state law covers indecent conduct:

> Appellant is preying on children with his vehicle, following them around and asking them questions *in order to probe their sexual interest*.  It's his actions, not just the words he is communicating, that make his conduct different from *Long*. *Not only is he expressing a sexual interest in them with his words*, but he is following or lingering in the area, proving further evidence of his abnormal interest in the children.

---

[10] In *Lopez*, the court found that a violation of Cal. Penal Code § 647.6(a)(1) was not a lesser-included offense of the California offense of committing a lewd act on a child because the lewd act offense requires touching, while Cal. Penal Code § 647.6(a)(1) does not require a touching but requires the irritating conduct and the sexual motivation described above.  *Lopez*, 19 Cal. 4th at 288-94.  In *Lopez*, the court cited to *Carskaddon*; while the *Lopez* court did not cite *Carskaddon* for the proposition that lewd or obscene conduct would annoy or molest a child under the statute, the *Lopez* court did not disapprove *Carskaddon's* language.  *Lopez*, 19 Cal. 4th at 290.

Brief on Behalf of Appellee, at 14 (emphasis added). Indeed, a grown man asking middle school girls for their phone number and telling them they are pretty "in order to probe their sexual interest" and thus "expressing a sexual interest in them with his words" could constitute communicating indecent language to a child, and a grown man's following middle school girls around in his car to approach them to ask such questions could constitute indecent conduct.[11]

In short, this case is closely analogous to the well-known example the *Manual for Courts-Martial* uses to explain the preemption doctrine. *MCM*, 2012, pt. IV, ¶ 60.c.(5)(a). In this example, a "larceny-type offense" (lacking the element of intent) would be preempted by Article 121, UCMJ. Here, Article 120b is a broad crime prohibiting sexual misconduct with children, as explained below, and Article 120b(c), Sexual Abuse of a Child, specifically defines a crime prohibiting, among other things, indecent conduct with and communicating indecent language to a child. In our view, Cal. Penal Code § 647.6(a)(1)'s requirement that a defendant's conduct be motivated by a sexual interest in a child is sufficient to make it an offense of the same type as that proscribed by Article 120b generally – a crime prohibiting sexual misconduct with children. Moreover, we believe that Cal. Penal Code § 647.6(a)(1) prohibits conduct that, considering both a defendant's actions and his motivation for those actions, is lewd or obscene. We thus conclude that the California statute is an offense of the same type as that proscribed by Article 120b(c) specifically – a crime prohibiting indecent conduct and language upon a child. Accordingly, we find that Cal. Penal Code § 647.6(a)(1) prohibits conduct that is also prohibited by an enumerated article of the UCMJ. The first prong of the preemption doctrine is therefore met.

Having made that determination, we now turn to whether "Congress intended . . . [Article 120b(c)] to cover a class of offenses in a complete way." The history of the various UCMJ articles prohibiting indecent acts or communications involving child victims, and the legislative history concerning the 2007 and 2012 amendments to the UCMJ, indicate that in enacting Article 120b, Congress intended to cover sexual misconduct with children in a complete way, including covering all indecency crimes involving child victims in a complete way under Article 120b(c).

Before the 2007 amendments to Article 120, UCMJ, indecency crimes against children were prohibited by the Article 134 offense entitled, Indecent Acts or Liberties with a Child. The elements of this offense when no physical contact occurred were:

---

[11] As this case was a guilty plea, there is an insufficient record on which to determine whether appellant's communications and conduct that constituted the basis of Specifications 2-7 of Charge I were, in fact, indecent communications and indecent conduct. We need not, however, make a finding on this issue in order to resolve this assignment of error.

(a) That the accused committed a certain act;

(b) That the act amounted to the taking of indecent liberties with a certain person;

(c) That the accused committed the act in the presence of this person;

(d) That this person was under 16 years of age and not the spouse of the accused;

(e) That the accused committed the act with the intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of the accused, the victim, or both; and

(f) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*MCM*, 2005, pt. IV, ¶ 87.b.(2). In relevant part, the then-applicable definition of "indecent liberties" included, "the liberties must be taken in the physical presence of the child, but physical contact is not required. . . . An indecent liberty may consist of communication of indecent language as long as the communication is made in the physical presence of the child." *MCM*, 2005, pt. IV, ¶ 87.c.(2). Two definitions of "indecent" applied; although phrased differently, both definitions stated the term meant immoral, offensive to propriety, corrupting to morals, and tending to incite lust. *Compare MCM*, 2005, pt. IV, ¶ 89.c and ¶ 90.c.

In 2007, Congress enacted a version of Article 120, including Article 120(j), Indecent Liberties with a Child. This offense had the following elements:

(a) That the accused committed a certain act or communication;

(b) That the act or communication was indecent;

(c) That the accused committed the act or communication in the physical presence of a certain child;

(d) That the child was under 16 years of age; and

(e) That the accused committed the act or communication

11

with the intent to:

>> (i) arouse, appeal to, or gratify the sexual desires of any person; or
>>
>> (ii) abuse, humiliate, or degrade any person.

*MCM*, 2008, pt. IV, ¶ 45.b.(10). The Analysis of Punitive Articles found in the 2008 *Manual for Courts-Martial* explained "[t]his new Article 120 consolidates several sexual misconduct offenses" and included in the list of offenses "replaced by this new paragraph 45 [*i.e.*, the 2007 version of Article 120]" the previous Article 134 offense of Indecent Acts or Liberties with a Child. *MCM*, 2008, App. 23, Analysis of Punitive Articles, A23-15.

Under the 2007 version of Article 120, UCMJ, the following definitions applied:

>> (11) *Indecent liberty.* The term "indecent liberty" means indecent conduct, but physical contact is not required. It includes one who with the requisite intent exposes one's genitalia, anus, buttocks, or female areola or nipple to a child. An indecent liberty may consist of communication of indecent language as long as the communication is made in the physical presence of the child. If words designed to excite sexual desire are spoken to a child, or a child is exposed to or involved in sexual conduct, it is an indecent liberty; the child's consent is not relevant.
>>
>> (12) *Indecent conduct.* The term "indecent conduct" means that form of immorality relating to sexual impurity that is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations. Indecent conduct includes observing, or making a videotape, photograph, motion picture, print, negative, slide, or other mechanically, electronically, or chemically reproduced visual material, without another person's consent, and contrary to that other person's reasonable expectation of privacy, of—
>>
>>> (A) that other person's genitalia, anus, or buttocks, or (if that other person is female) that person's areola or nipple; or

> (B) that other person while that other person is engaged in a sexual act, sodomy (under section 925 (article 125) of this chapter), or sexual contact.

*MCM*, 2008, pt. IV. ¶ 45.a.(t)(11), (12); *see also MCM*, 2012, App. 28, Punitive Articles Applicable To Sexual Offenses Committed During the Period 1 October 2007 Through 27 June 2012, A28-4.

In 2012, Congress enacted Article 120b of the UCMJ. This article "criminalizes sexual offenses against children under the age of 16 which were previously contained in the 2007 version of Article 120." *MCM*, 2012, App. 23, Analysis of Punitive Articles, A23-16. The President further explained that in Article 120b, "[t]he definitions of prohibited sexual acts, sexual contact, and lewd acts have been broadened to cover all sexual offenses against children currently covered under the 2007 version of Article 120(g), Article 120(i), and Article 120(j)." *Id.* Moreover, the analysis explained that Article 120b(c) specifically covers all indecency crimes against children:

> The new "Sexual Abuse of a Child" offense under Article 120b.(c), which proscribes committing a "lewd act" upon a child, was intended to consolidate the 2007 version of Article 120(f), Article 120(g), Article 120(i), and Article 120(j), by expanding the definition of "lewd act" to include any sexual contact with a child, indecent exposure to a child, communicating indecent language to a child, and committing indecent conduct with or in the presence of a child. Exposure, communication, and indecent conduct now include offenses committed via any communication technology to encompass offenses committed via the internet (such as exposing oneself to a child by using a webcam), cell phones, and other modern forms of communication. This change expands the pre-2012 definition of "indecent liberty" which proscribed conduct only if committed in the physical presence of a child.

*Id*.

We conclude after reviewing this history that Congress intended Article 120b(c) to cover all indecency crimes involving child victims. In short, the 2007 version of Article 120 was intended to cover all offenses prohibited under the old Article 134 offense of Indecent Acts or Liberties with a Child, and when Article 120b was enacted in 2012, it in turn was intended to cover all offenses prohibited under the 2007 version of Article 120(j). Moreover, after reviewing this history we

13

agree with our sister court in *Long* "that Congress intended for Article 120b, UCMJ, to be a comprehensive statute to address sexual misconduct with children." *Long*, 2014 CCA LEXIS 386, at *13.[12] As Cal. Penal Code § 647.6(a)(1) is a statute prohibiting sexual misconduct with children as explained above, the second prong of the preemption doctrine is met. In other words, there was no "gap" in federal criminal law which necessitated "filling" by resorting to state law.

Having found that both prongs of the preemption doctrine are met with respect to Specifications 2-7 of Charge I, we will set aside those specifications and that charge. Our resolution of the preemption issue renders appellant's other assignments of error moot.[13]

## CONCLUSION

The findings of guilty of Specifications 2-7 of Charge I and Charge I are set aside. The remaining findings of guilty are AFFIRMED.

In addition to asking that we dismiss Specifications 2-7 of Charge I, appellant asks that we order a sentence rehearing. We decline to do so. Instead, we reassess appellant's sentence.

In *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), our superior court set forth the standard for sentence reassessment: "if the [service] court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error . . . ." *Id.* at 308. After conducting a thorough analysis on the basis of the entire record and in accordance with the principles articulated in *Sales* and *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we are confident in our ability to reassess appellant's sentence without the need for a rehearing.

In evaluating the *Winckelmann* factors, we find there is no dramatic change in the penalty landscape or significant decrease in sentencing exposure because appellant's maximum sentence is now reduced from 21.5 years to 15.5 years of confinement as a result of our setting aside the six specifications of Charge I, each

---

[12] In reaching this conclusion, we are mindful that Congress left sodomy against a child outside of Article 120b. *See* Article 125, UCMJ. That Congress left this type of sexual crime against a child outside of Article 120b does not compel a conclusion that Congress did not intend Article 120b to be an otherwise comprehensive statute addressing sexual misconduct against children.

[13] Specifically, we need not determine whether the Article 120a offense of stalking may also have preempted a state stalking statute.

of which carried a maximum of one year of confinement. Appellant's adjudged and approved sentence of two years of confinement was still well below the newly applicable maximum punishment. Also, appellant remains convicted of the most egregious offense he was charged with—Article 120b, UCMJ, Sexual Abuse of a Child (the Specification of Charge III). Moreover, appellant's underlying misconduct (asking TSH and MGV for their telephone numbers) that served as the basis for Specifications 6 and 7 of Charge I would have remained admissible—and necessary—in order for the government to prove appellant violated the no-contact order issued by his company commander (the Specification of Charge IV). Finally, we review the records of a substantial number of courts-martial involving sexual misconduct and we have extensive experience with the level of sentences imposed for such offenses under various circumstances.

After our review of the record, and accounting for setting aside Specifications 2-7 of Charge I and Charge I, we are confident that the military judge would have adjudged a sentence no less severe than reduction to the grade of E-1, twenty months' confinement, and a bad-conduct discharge. We are also confident that the convening authority would have approved that sentence. We also conclude, pursuant to Article 66, UCMJ, that such a sentence is appropriate for the remaining findings of guilty.

After considering the entire record, we AFFIRM only so much of the sentence as provides for a bad-conduct discharge, confinement for twenty months, and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court